dfsUNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD PLUMBAR** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **JEFF LANDRY, ET AL.** | **NO.20-00361-BAJ-RLB** |

## RULING AND ORDER

Before the Court is **Defendant, Scott Perrilloux's Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. 37)**. The Motion is opposed. (Doc. 38). For the reasons stated herein, the Motion is **GRANTED.**

**I. BACKGROUND**

Cockfighting has been prohibited in Louisiana since 2008. *See* La. Stat. Ann. § 14:102.23. On April 29, 2020, Plaintiff Lloyd Plumbar was charged with several misdemeanor criminal charges for cockfighting. (Doc. 1, ¶ 15). Plumbar is the Pastor of Plaintiff Holy Fight Ministries, a church whose congregation "hold[s] the sincere religious belief. . . that cockfighting is an integral and essential part of their religious faith." *Id.* at ¶ 13.

On June 12, 2020 Plaintiffs filed suit against Scott Perrilloux in his official capacity as District Attorney of Louisiana's 21st Judicial District,[1] alleging violations

---

[1] Plaintiffs also filed suit against Jeff Landry, in his official capacity as Attorney General of Louisiana and Jason Ard in his official capacity as Sheriff of Livingston Parish. Plaintiffs' claims against Defendant Landry and Ard have since been dismissed. (Docs. 18, 28).

1

of the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution, as well as a violation of the Free Exercise Clause of the Louisiana Constitution. (Doc. 1, p. 4–8). Plaintiffs' Complaint requested four specific categories of relief: a temporary restraining order prohibiting enforcement of Louisiana Revised Statute § 14:102.23 against Plaintiffs; a permanent injunction prohibiting enforcement of Louisiana Revised Statute § 14:102.23 against Plaintiffs; compensatory, nominal, punitive, and other damages; and, attorney's and expert witness fees. (Doc. 1, p. 8).

On June 25, 2020, the Court held a hearing on Plaintiffs' request for a temporary restraining order. (Doc. 14). The motion was denied. *See* (Doc. 18). Subsequently, Defendant Scott Perriloux filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs claims against him should be dismissed because he is entitled to "absolute immunity" because he was acting "within the scope of his duties as district attorney" by bringing charges against Plumbar. (Doc. 37-1, p. 9). In the alternative, Defendant argues that Plaintiffs have failed to allege that any allege constitutional violations were the result of a policy of the District Attorney's office. (*Id.* at p. 12).

In opposition, Plaintiffs assert that absolute immunity is not applicable to official capacity claims. (Doc. 38-1, p. 6). Plaintiffs further assert that they have pleaded a claim upon which relief can be granted, solely as to their Free Exercise Clause claims. (Doc. 38-1, p. 8).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against

2

the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III. ANALYSIS

### A. Absolute Immunity is Inapplicable to Official-Capacity Actions

Defendant Perrilloux argues that he is entitled to absolute immunity[2] from suit, pursuant to *Imbler v. Pachtman*, 424 U.S. 409 (1975). (Doc. 37-1, p. 10). Plaintiff

---

[2] Absolute immunity exempts a government official from personal liability to a person whose federal rights have been violated. Di Ruzzo v. Tabaracc*i*, 480 F. App'x 796, 797 (5th

3

argues that, because Perrilloux has only been sued in his official capacity, absolute immunity does not apply. (Doc. 38-1, p. 6). Rather, the Court should apply the policy liability framework established by *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). (*Id.*). Defendant counters that "[t]he Supreme Court did not expressly limit its holding in *Imbler* to claims against district attorneys in their individual capacities," and therefore invites the Court to hold that "the absolute immunity given to district attorneys is equally applicable to claims against them in their official capacities." (Doc. 37-1, p. 12).

While the Supreme Court in *Imbler* was silent as to whether absolute immunity applied to official capacity suits, it clarified its holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). The Court held that "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Id.* at 165. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55 (1978)). Therefore, because "a § 1983 suit naming defendants only in their 'official capacity' does not involve personal liability to the individual defendant[,] [c]oncomitantly, defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual

---

Cir. 2012) (per curiam) (*quoting* O'Neal v. Miss. Bd. of Nursing, 113 F.3d 62, 65 (5th Cir. 1997)); Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 757 F.2d 676, 687 (5th Cir. 1985). It extends to officials, such as judges and prosecutors, whose functions are intimately connected to the judicial process. *See* Hart v. O'Brien, 127 F.3d 424, 439 (5th Cir. 1997), *abrogation on other grounds recognized by* Spivey v. Robertson, 197 F.3d 772, 775–76 (5th Cir. 1999); Austin Mun. Sec., Inc., 757 F.2d at 688.

4

capacities, are unavailable in official-capacity suits." *Turner v. Houma Mun. Fire and Policy Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000); *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.").

In this case, because Plaintiffs have sued Scott Perrilloux in his official capacity as District Attorney of Louisiana's 21st Judicial District, they have effectively sued the 21st Judicial District, not Scott Perrilloux individually. Therefore, absolute immunity does not apply.

### B. Plaintiffs Have Not Adequately Pleaded *Monell* Liability

Defendant, in the alternative, argues that Plaintiffs have failed to state a claim against him, even in his official capacity, because Plaintiffs have not pointed to an official policy or custom that motivated the alleged violation of their constitutional rights. (Doc. 37-1, p. 12).

To defeat a Motion to Dismiss under Rule 12(b)(6) here, Plaintiff "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citations omitted). In the absence of an official policy, a plaintiff may also allege that:

> a persistent, widespread practice of city officials or employees which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984) (per curium).

5

The Fifth Circuit is clear that "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). A general allegation of a policy is not sufficient. *See Spiller*, 130 F.3d at 167. Nor is mere "speculation that any particular policymaker . . . knew about the alleged custom." *Peña*, 879 F.3d at 623.

Plaintiffs allege that the District Attorney's Office disregarded probable cause in their arrest and prosecution of Plumbar, in violation of their official duties. (Doc. 38-1, p. 10). Further, Plaintiffs allege that the legislation which bans cockfighting in Louisiana is "so vague, overly broad, and sweeping in scope that it intrudes upon the Federal and State guarantees of freedom of religion." (Doc. 1 at ¶ 4). In opposition to Defendant's Motion, Plaintiffs specifically argue that Louisiana's prohibition on cockfighting *solely* deprived Plaintiffs of their ability to "free[ly] exercise [] their religious beliefs."[3] (Doc. 38-1, p. 12). Therefore, Plaintiffs are deemed to have abandoned their Establishment Clause claim. *See Robertson v. Gautreaux*, No. CV 16-341-JJB-RLB, 2017 WL 690542, at *6 (M.D. La. Feb. 21, 2017), *aff'd in part*, 731 F. App'x 337 (5th Cir. 2018) (finding that the failure to address a defendant's arguments for dismissal is deemed abandonment of the claim). Further,

---

[3] Plaintiffs have arguably waived this claim by asserting that the arrest at issue evidenced secular cockfighting and was therefore "an isolated incident and not the way Plaintiffs normally conduct their worship services." (Doc. 38-1, p. 8). However, because this assertion was not included in Plaintiffs' original complaint, the Court will analyze Plaintiffs' Free Exercise Claim as pleaded.

6

as was discussed in the Order granting Defendant Ard's Motion to Dismiss, (Doc. 28), Plaintiffs have not alleged a violation of their constitutional rights. *See* (Doc. 28, p. 4).

The Free Exercise Clause of the Louisiana State Constitution and the Free Exercise Clause of the United States Constitution, as applied to the states through the Fourteenth Amendment, are nearly identical. As such, an analysis of Plaintiffs' state and federal free exercise claims can proceed under the same analytical framework.[4] The protections of the Free Exercise Clause under the United States Constitution arise if "the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).

In analyzing a Free Exercise Clause claim, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest" even if the application of that law happens to present a burden on a particular religious practice. *Id.* The concepts of neutrality and general applicability are intertwined such that a law that fails to satisfy the neutrality requirement will likely fail to satisfy the requirement of general applicability, and vice versa. *Id.* at 531–32. A law burdening religious practice that is not neutral or not of general application must undergo strict

---

[4] *See* Cunningham v. City of Shreveport, 407 F.Supp.3d 595, 610 (W.D. La. Aug. 22, 2019); *See also* Seegers v. Parker, 241 So. 2d 213, 216–17 (1970) ("The great similarity of the establishment clause of [the Louisiana] Constitution and that of the United States Constitution allows us to use the United States Supreme Court interpretations of the federal clause as an aid for interpreting our own.").

scrutiny analysis. *Id.* at 546.

Plaintiffs have not put forth any evidence that the law is not neutral or generally applicable. Louisiana Revised Statutes section 14:102.23 provides, in pertinent part, that:

> "[i]t shall be unlawful for any person to: [o]rganize or conduct any commercial or private cockfight wherein there is a display of combat or fighting among one or more domestic or feral chickens and in which it is intended or reasonably foreseeable that the chickens would be injured, maimed, mutilated, or killed."

LA. REV. STAT. § 14:102.23(A)(1) (2019).

The text of the law reveals that the law's purpose is to prevent animal cruelty, as it only bans cockfighting where it is foreseeable that the animal may be injured. Louisiana is not alone in enacting such a provision. Indeed, Louisiana was the last of the fifty states to outlaw cockfighting. *See United States v. Olney*, No. 1:13-CR-2094-TOR-19, 2016 WL 660886, at *2 (E.D. Wash. Feb. 18, 2016), *aff'd*, 693 F. App'x 652 (9th Cir. 2017). Further, the prohibition of acts of cruelty towards animals "has a long history in American law, starting with the early settlement of the Colonies." *United States of America v. Stevens*, 559 U.S. 460, 469 (2010).

It is true that facial neutrality is not necessarily determinative. *Church of the Lukumi Babalu Aye*, 508 U.S. at 534. However, Plaintiffs cite to nothing that indicates that Louisiana's prohibition on cockfighting was drafted with the intent to discriminate against religious conduct. Plaintiffs merely argue that the cockfighting ban burdens their religious freedoms. (Doc. 38-1, p. 8). However, a religious belief—no matter how sincerely held—does not act as an absolute shield against generally applicable laws. *See, e.g. Reynolds v. United States*, 98 U.S. 145 (1879); *Braunfeld v.*

8

*Brown*, 366 U.S. 599 (1961) (plurality opinion) ("[T]he freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions.").

Because Plaintiffs have failed to establish that the statute is not neutral and not of general applicability, they have failed to state a claim upon which relief can be granted.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion (Doc. 37) is **GRANTED**. Plaintiff's claims against Defendant, Scott Perrilloux are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, as there are no remaining defendants, that Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

A separate judgment shall issue.

Baton Rouge, Louisiana, this 26th day of August, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**